UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
WINSTON EBANKS,

                 Plaintiff,                                 MEMORANDUM AND ORDER
                                                                      05-CV-3172 (RRM) (LB)

              - against -

NEW YORK CITY DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

                 Defendant.
----------------------------------------------------------------X
MAUSKOPF, United States District Judge.

      *Pro se* Plaintiff Winston Ebanks ("Ebanks") commenced this action against Defendant New York City Department of Environmental Protection ("DEP"), alleging employment discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* Ebanks alleges that DEP subjected him to disparate treatment – including denying him "overtime and compensatory time" – based on his race, which he identifies as "Black." Currently before the Court is DEP's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, together with Ebanks's opposition papers and DEP's reply. For the reasons set forth below, DEP's motion is GRANTED and the complaint is DISMISSED in its entirety.

## BACKGROUND

      The following facts are drawn from (i) the complaint, (ii) DEP's Local Rule 56.1 statement and the exhibits annexed thereto, and (iii) Ebanks's affirmation in opposition to the motion and the exhibits attached thereto, and are either undisputed or set forth in the light most favorable to Ebanks. Ebanks began working with DEP in 1991, as a Project Coordinator assigned to the Bureau of Environmental Engineering. Ebanks was given the title of Associate Project Manager in 1994.

1

In 2002, Ebanks transferred to the Bureau of Wastewater Treatement ("BWT"). Ebanks remains employed by DEP.

A. *Ebanks's union grievance*

Prior to his transfer to BWT, Ebanks filed a union grievance claiming that he was performing the duties of a higher level position – Associate Project Manager Level II ("APM-2") – than that which he then held – Associate Project Manager Level I ("APM-1"). Based on his claim that he was performing the duties of an APM-2, Ebanks sought to be reclassified to that higher position. This type of grievance is also referred to as a claim for working "out-of-title."

The grievance was resolved by stipulation dated April 15, 2003. DEP agreed to pay Ebanks the difference between his salary and an APM-2 salary for the period from January 1, 2000 to May 31, 2001, and further agreed to pay Ebanks at the APM-2 salary level for the period from March 7, 2003 through the effective date of a change of title or assignment to different duties. By that time, Plaintiff was working at BWT, where one of his supervisors was Jerry Fragias ("Fragias"), Division Chief for Facilities Planning. Six months after the union grievance settlement, the New York City Office of Labor Relations contacted Fragias to determine whether Ebanks continued to perform the duties of an APM-2. Fragias responded that Ebanks was not performing such duties. As such, in January 2004, Deputy Commissioner Alfonso Lopez informed Ebanks that he would no longer receive differential pay at the APM-2 level. That same month, Ebanks filed another union grievance alleging that he was working "out-of-title" and performing the duties of an APM-2. In December 2004, a Review Officer for the Office of Labor Relations denied the grievance.

B. *Ebanks's strained relationships with supervisors*

Ebanks claims that "[o]n or about October 2003, [he] noticed that his work was being overly scrutinized by [Fragias,] who was several tiers of supervision above him." Ebanks alleges that Fragias once remarked to Ebanks that with "out-of-title" pay and overtime, Ebanks could

potentially earn as much money as a manager. Ebanks claims that, beginning in late 2003 through 2004, Fragias was impatient with Ebanks regarding work deadlines and, on at least one occasion, Fragias reprimanded Ebanks for failing to meet a deadline despite the fact that Fragias had previously given Ebanks more time to complete the task assigned. Ebanks further alleges that, during one meeting in January 2004, Fragias became enraged, yelled and cursed at Ebanks, threw the folder or clipboard he was holding, and stormed out of the room.

Ebanks alleges that he and Fragias spoke after this incident to clear the air. Nevertheless, although Ebanks "thought that everything between he and [Fragias] was resolved . . . Fragias brought in another supervisor [Kavita Sazawall ("Sazawall")] who immediately acted rudely towards [Ebanks] and spoke to him in a demeaning manner." Specifically, Ebanks testified at his deposition that Sazawall would "yell" at him and "blurt" things out at him. When asked what Sazawall yelled at him, Ebanks responded: "Just in a berating type of way, unintelligibly. I guess she said, 'you should do this. Jerry wants this. Jerry wants this,' just blurting out, 'Jerry wanted this right away.'" Ebanks testified that he didn't know why Sazawall said these things to him because, in his opinion, "there was nothing pressing" at the time. Ebanks also testified that Sazawall was once included on an e-mail from Fragias to Ebanks and rudely ordered Ebanks to look at the e-mail right away, despite the fact that he was doing something else at the time.

In his affirmation and deposition testimony, Ebanks recounts another instance of conflict with his supervisors. In April 2004, while Fragias was on vacation, Civil Engineer Ajay Desai ("Desai") served as the acting section chief. Desai alleged that on April 13, 2004, Ebanks cursed at him and spoke to him in an intimidating manner. Ebanks alleges that when Fragias returned from vacation, he responded to this incident rashly. Ebanks claims that Fragias ordered him to attend a meeting, without union representation, to discuss the incident. Ebanks also claims that Fragias threatened to have security remove him from the premises were a similar incident to occur. This

3

incident was the subject of proceedings before the New York City Office of Administrative Trials and Hearings, at which the presiding administrative law judge recommended the lowest penalty, a reprimand, for Ebanks's conduct.

Ebanks alleges that, after the incident involving Desai, he sought the assistance of his union, DEP's "labor relations office," and "the DEP EEO." Ebanks avers that, despite these efforts, his relationship with Fragias continued to deteriorate. For example, Ebanks alleges that in April 2005, Fragias rescinded another supervisor's approval of Ebank's request for two days off. In addition, Ebanks alleges that Fragias unreasonably refused to accommodate Ebanks's attempt to take leave under the Family Medical Leave Act ("FMLA") to care for his ailing wife.

## C. *Failure to authorize overtime*

Ebanks further alleges that, subsequent to his transfer to BWT in 2002, he was "routinely" denied opportunities to earn overtime. In support of this contention, Ebanks has submitted evidence concerning one instance where Fragias refused to authorize overtime. According to Ebanks, while he was preparing a response to a violation notice in January 2004, Fragias asked to see a draft. When Ebanks told Fragias that he was missing certain documents, Fragias agreed that Ebanks could turn in the assignment by the middle of the following week. Nevertheless, the following Monday, Fragias became angry that Ebanks had not yet completed the assignment. This is the same incident that allegedly resulted in Fragias's yelling and throwing his folder or clipboard. Ebanks attaches copies of e-mail correspondence pertaining to this incident, in which Fragias wrote that Ebanks was no longer authorized to receive overtime or compensatory time. Elsewhere in his submissions, Ebanks avers that he "was not afforded as much overtime to complete his tasks as did [*sic*] John Iliopoulos, a white man who contributed very little on these assignments."

In addition, Ebanks has submitted DEP personnel records from 2006, pertaining to two units in BWT – Project Management and Project Management IFA (the latter being Ebanks's unit).

According to those records, Ebanks earned the lowest amount of overtime among the listed Project Management IFA employees, approximately $3,130, while the remaining employees on that list earned overtime in amounts ranging from approximately $7,000 to approximately $9,420. In the Project Management unit, one of the two listed employees earned approximately $660 in overtime, while the other – John Iliopoulos ("Iliopoulos") – earned approximately $10,920.

## APPLICABLE LAW

### A. *Summary judgment standard*

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)); *Brosseau v. Haugen*, 543 U.S. 194, 195 n.1 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a

reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247-48).

**B.** *Title VII disparate treatment standard*

The Second Circuit has emphasized "the need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent." *Holcomb v. Iona Coll.*, 521 F.3d 130 (2d. Cir. 2008) (citations omitted). District courts must remain mindful that, when an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available, so that "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Even in discrimination cases, however, a plaintiff must provide more than conclusory allegations to defeat a motion for summary judgment, *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), as "[s]ummary judgment remains available for the dismissal of claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997).

The Court reviews Ebanks's claim for workplace discrimination under Title VII according to the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* "burden-shifting" inquiry, in the absence of direct evidence of employment discrimination, a plaintiff must first establish a *prima facie* case of discrimination by demonstrating

6

that: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he was subjected to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). This burden is minimal and does not require specific evidence of discrimination. *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006). If a plaintiff meets this burden, the defendant employer must then articulate a "legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. A plaintiff must then provide evidence that the employer's explanation is not true but a pretext for discrimination. *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001).

The ultimate burden to persuade the trier of fact "that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981). It is not enough for a plaintiff merely to create doubt that the defendant's stated reason was the real reason for discharging him. He must also put forth "evidence that would permit a rational factfinder to infer that the discharge was actually motivated, in whole or in part, by discrimination" on the basis of his race. *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir. 1997).

C.  *Title VII retaliation and hostile work environment standards*

Construing Ebanks's submissions liberally in light of his *pro se* status, the Court will also evaluate Ebanks's evidence under the standards applicable to claims for (i) Title VII retaliation and (ii) hostile work environment. The elements of a claim of retaliation under Title VII are: (1) that a plaintiff engaged in protected activity under Title VII; (2) that the employer was aware of the protected activity, (3) that the employer took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse action. *See Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006).

7

To establish a claim of hostile work environment, a plaintiff must establish the following elements: (1) that his workplace was permeated with discriminatory intimidation, ridicule and insult sufficiently severe or pervasive to alter the conditions of his work environment; and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). The conduct in question "must be severe or pervasive enough to create an environment that 'would reasonably be perceived, and is perceived, as hostile or abusive.'" *Schwapp*, 118 F.3d at 110 (quoting *Harris*, 510 U.S. at 22). In other words, the first element of a hostile work environment claim requires allegations that demonstrate that the environment was *both* objectively and subjectively hostile and abusive. *See Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001).

To establish a hostile work environment claim, however, a plaintiff "must prove more than a few isolated incidents of [discriminatory] enmity. Casual comments, or accidental or sporadic conversation, will not trigger equitable relief pursuant to the statute." *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir. 1986) (citations omitted). In evaluating a hostile work environment claim, a court must consider "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Howley*, 217 F.3d at 154 (quoting *Harris*, 510 U.S. at 23).

## DISCUSSION

Considering the factual record in the light most favorable to Ebanks and drawing all reasonable inferences in his favor, the Court finds that none of his claims is sufficient to survive summary judgment.

A.  *Disparate treatment under Title VII*

Ebanks has submitted evidence of two types of adverse employment actions: (i) failure to pay Ebanks at the level of an APM-2, and (ii) failure to authorize overtime and/or compensatory time. There is no dispute that Ebanks is a member of a protected class and that he possessed the minimum qualifications required for his position. While the foregoing satisfies the first three requirements of a *prima facie* case, Ebanks has failed to meet the fourth and final requirement because he has identified no evidence that could give rise to an inference of discrimination with respect to either of the adverse employment actions at issue.

Indeed, Ebanks offers no evidence, beyond mere conclusory allegations, to support a finding of discrimination. To begin with, there is no allegation – let alone evidence – that Fragias or anyone else at DEP ever made a comment concerning race. Nevertheless, Ebanks might still satisfy the fourth element of his *prima facie* case were he able to show that DEP "treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). "When considering whether a plaintiff has raised an inference of discrimination by showing . . . disparate treatment, [the Second Circuit] has said that the plaintiff must show [he] was 'similarly situated in all material respects' to the individuals with whom [he] seeks to compare [him]self.'" *Id.* (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 2000)). Ebanks has failed to make such a showing in this case.

Ebanks bears the burden of showing that similarly situated non-minority employees were treated more favorably than he. *Graham*, 230 F.3d at 39. At the summary judgment stage, while Ebanks need not definitively prove that he was similarly situated to one or more comparator employees, he must, at the very least, point to facts that could reasonably support such a conclusion. *See, e.g., Gibbs v. Potter*, No. 3:04-CV-1972 (RNC), 2008 U.S. Dist. LEXIS 72504, at *11-14 (D.

Conn. Sept. 22, 2008) (granting summary judgment for employer defendant where record contained no facts to support a finding that comparator employees were similarly situated).

With respect to DEP's classification of Ebanks as an APM-1 rather than the higher-paid position of an APM-2, Ebanks does not even argue – much less demonstrate – that he was treated less favorably than any similarly situated non-minority employee. As such, there is no factual basis on which a jury could find that DEP's decision not to classify Ebanks as an APM-2 was based on discriminatory animus. Moreover, DEP has articulated a legitimate, nondiscriminatory reason for its decision – that Ebanks was not performing the duties of an APM-2 – and Ebanks has certainly failed to meet the higher burden of demonstrating facts from which to conclude that DEP's nondiscriminatory reason was mere pretext. *See Griffin v. TNT Int'l Express*, No. 05 Civ. 10474 (PKC), 2008 U.S. Dist. LEXIS 19808, at *31 (S.D.N.Y. Mar. 11, 2008) ("The burden of establishing pretext is a higher burden than that required to establish a *prima facie* case, and the Second Circuit has instructed that plaintiff's 'initially vague allegation of discrimination' must be 'increasingly sharpened and focused' at this stage." (quoting *Meiri v. Dacon*, 759 F.2d 989, 995 (2d Cir. 1985)).

The only allegation as to which Ebanks even hints at a racial component is his claim that he was afforded less overtime than Iliopoulos. In support of this claim, Ebanks relies on payroll records from 2006 and his own generalization that he "was not afforded as much overtime to complete his tasks as [Iliopoulos]." Although the payroll records do indeed demonstrate that Iliopoulos earned more overtime than Ebanks during a certain period in 2006 (after Ebanks filed his complaint), Ebanks fails to point to facts from which to conclude that he and Iliopoulos were similarly situated employees. Despite a full opportunity to conduct discovery, Ebanks presents no facts concerning Iliopoulos's job responsibilities or any of the factors that might bear on the amount of overtime work that Iliopoulos performed. Because Ebanks fails to identify any facts from which

to conclude that he was similarly situated to Iliopoulos – the only comparator he has identified – it follows *a fortiori* that Ebanks cannot demonstrate that he was treated less favorably than a similarly situated non-minority employee. Accordingly, Ebanks's overtime claim fails to give rise to an inference of racial discrimination.

In addition, as with Ebanks's claim regarding his employee classification, DEP has articulated a legitimate, nondiscriminatory reason for limiting Ebanks's overtime. There is only one instance in the record where Ebanks was "denied" overtime – *i.e.*, in early 2004 when Fragias accused Ebanks of failing to complete his assigned tasks. In that instance, Fragias cited Ebank's lack of "concrete progress" on an assignment as the reason for his decision not to authorize additional overtime. Moreover, DEP has presented evidence – uncontroverted by Ebanks – demonstrating that Fragias *did* authorize overtime opportunities for Ebanks, both before and after the incident in early 2004, where he deemed such overtime warranted. Ebanks has identified no evidence from which to conclude that the nondiscriminatory reason proffered by DEP was false, much less evidence from which to conclude that the real reason for DEP's failure to grant Ebanks additional overtime opportunities was racial discrimination. As such, Ebanks's disparate treatment claim fails at both the first and third steps of the three-step *McDonnell Douglas* inquiry, and DEP is entitled to summary judgment on this claim.

**B.** ***Retaliation under Title VII***

Although Ebanks alleges that his employer "retaliated" against him, the only activity in the complaint surrounding the retaliation claim is Ebanks's filing of his "out-of-title" union grievance. The filing of a union grievance, however, is not a "protected activity" under Title VII and, therefore, cannot form the basis for a Title VII retaliation claim. *See, e.g., Lewis v. Conn. Dep't of Corr.*, 355 F. Supp. 2d 607, 617-18 (D. Conn. 2005) (citing cases).

11

Although Ebanks's filing of a complaint with the EEOC in June 2004 constituted protected activity under Title VII, this cannot serve as the basis for a Title VII retaliation claim under the facts of this case. According to Ebanks's own allegations, he filed the EEOC complaint in response to the adverse employment actions underlying this lawsuit. Ebanks has not alleged that the EEOC complaint was a *cause* of the adverse employment actions of which he complains, nor could he, as those actions preceded – indeed, led to – his filing of the EEOC complaint. Although the Court has construed Ebanks's submissions liberally and considered whether his EEOC complaint could serve as the basis for a Title VII retaliation claim, the impossibility of his establishing causation under the facts of this case compels the conclusion that such a claim is not viable. Moreover, as explained above, DEP has proffered legitimate, nondiscriminatory reasons for the alleged adverse employment actions at issue in this case, and Ebanks has failed to show pretext. Nothing in the record supports the conclusion that DEP's proffered reasons for its actions were false, nor that DEP's true intent was retaliation. Accordingly, to the extent that Ebanks asserts a claim for retaliation under Title VII, DEP is entitled to summary judgment on this claim as well.

C.  *Hostile work environment*

Finally, to the extent that Ebanks asserts that he was subjected to a hostile work environment, this claim is also insufficient to withstand summary judgment. A hostile work environment claim will only lie where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (internal quotations and citations omitted); *see also Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)).

12

The facts here, taken in the light most favorable to Ebanks, fall far short of the level of severity and pervasiveness required to sustain a hostile work environment claim. While Ebanks identifies a handful of isolated incidents where he felt he was treated unfairly by Fragias and others, he has by no means shown a pattern of intimidation, insult, or abuse. Moreover, none of the interactions of which Ebanks complains had any demonstrable connection to his race. *See James v. Conn. Dep't of Corr.*, No. 3:05-cv-1787 (CFD), 2009 U.S. Dist. LEXIS 2270, at *17 (D. Conn. Jan. 14, 2009) ("Although actionable harassment is not confined to explicitly racial conduct, 'the plaintiff is required to establish that the harassment complained of was based on [the protected characteristic].'" (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998)). As such, to the extent that Ebanks has asserted a hostile work environment claim, DEP is entitled to summary judgment on that claim as well.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED and the Complaint is DISMISSED in its entirety. The Clerk of the Court is directed to enter judgment accordingly, mail to Plaintiff a copy of said judgment and this Memorandum and Order, and close the case.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2009

ROSLYNN R. MAUSKOPF
United States District Judge